**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 16-cv-2561-WJM-CBS

VALERIE REVELES, an individual,

> Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES, a Colorado non-profit corporation,

> Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

Plaintiff Valerie Reveles ("Reveles") sues her employer, Catholic Health Initiatives ("CHI"), for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (ECF No. 1.) From the same set of facts underlying her Title VII claims, Reveles also alleges a number of state-law claims, namely, violation of the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-401 *et seq.*; negligent supervision and retention; respondeat superior; and intentional infliction of emotional distress.

Currently before the Court is CHI's Motion to Dismiss, which argues that all claims must be dismissed for various reasons. (ECF No. 14.) As explained in detail below, the Court agrees that Reveles's two theories of Title VII liability must be dismissed. Because those are the only claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over her state-law claims and therefore does not reach CHI's arguments regarding those claims, which will

be dismissed without prejudice.[1]

## I. LEGAL STANDARD

### A.    Rule 12(b)(1) Versus Rule 12(b)(6)

At the outset, the parties raise a complicated question of the proper legal standard to apply to CHI's motion, and particularly whether this Court may consider materials beyond Reveles's complaint when evaluating whether her claims may go forward.  As will become clear below, CHI's principal argument is that Reveles did not file a timely charge of discrimination with the EEOC, or at least did not file a charge fairly encompassing the allegations in her complaint.  CHI characterizes this as a defect going to subject matter jurisdiction and thus invokes Federal Rule of Civil Procedure 12(b)(1).  (ECF No. 14 at 5.)  When a motion is brought under that rule, a court may usually consider materials beyond the complaint, such as exhibits and affidavits submitted by the defendant.  *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).  CHI also argues that Reveles's claims fail under a Rule 12(b)(6) analysis, which typically limits the Court to considering only the complaint.  (ECF No. 14 at 5–6.)

The Tenth Circuit has certainly held that "a plaintiff's exhaustion of his or her administrative remedies [including pursuing an EEOC charge] is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit." *Shikles v.*

---

[1] Reveles's response brief runs to 31 pages, not counting the signature block or certificate of service.  (*See* ECF No. 16.)  The undersigned's page limit for this kind of brief is 15 pages.  *See* WJM Revised Practice Standard III.C.1.  CHI, in its reply brief, points out this fact and suggests that the Court strike Reveles's response brief.  (ECF No. 29 at 1 n.1.)  However, Reveles filed her response brief when this case was still drawn solely to Magistrate Judge Shaffer, who has no specific page limitations.  *See* CBS Civil Practice Standards, Pretrial Procedures, § IV.  The parties subsequently chose not to consent to Magistrate Judge jurisdiction, and so the case was drawn to the undersigned, eight days after Reveles filed her brief.  (ECF No. 20.)  Although the undersigned at times enforces his Practice Standards even against papers filed before the undersigned becomes the presiding judge, striking Reveles's response would not be in the interest of justice in the present circumstances.

*Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). But later Tenth Circuit decisions have limited this holding to situations in which a plaintiff entirely failed to file anything like a charge with the EEOC. *See Jones v. Needham*, 856 F.3d 1284, 1289 (10th Cir. 2017) ("our recent cases suggest that exhaustion in this context might be better characterized as a [non-jurisdictional] claims-processing obligation"); *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1039–41 (10th Cir. 2015) (criticizing *Shikles* as out-of-step with various Supreme Court rulings and finding that certain tasks within the process of filing a charge are non-jurisdictional).

Moreover, specifically as to CHI's timeliness arguments, the Supreme Court itself has declared that the inquiry is not jurisdictional: "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Tenth Circuit thus treats timeliness as a prerequisite to suit and places the burden of proof on the plaintiff, but timeliness is not a jurisdictional requirement "and is thus subject to waiver, estoppel, and tolling when equity requires." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007).

Given all of this, the Court concludes that CHI raises arguments that must be evaluated under Rule 12(b)(6), not Rule 12(b)(1). But this does not prevent the Court from considering the lone outside-the-pleadings document that CHI proffers, namely, Reveles's actual Charge of Discrimination filed with the EEOC on July 6, 2016 ("Charge"). (*See* ECF No. 14-1.) The Court may consider a document outside the pleadings even in a Rule 12(b)(6) analysis if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic.

*Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).[2]  Here, the

Charge is "mentioned" because Reveles alleges the existence of it and claims that she

"satisfied her statutory obligation to exhaust administrative remedies" by filing it.  (ECF

No. 1 ¶ 11.)  The Charge is also "central" because exhaustion is a prerequisite to

maintaining this suit and Reveles bears the burden of proof on this matter.  *See Montes*,

497 F.3d at 1167.  Finally, Reveles does not challenge the Charge as inauthentic.

Thus, the Court may consider the Charge while remaining within the restraints of a

proper Rule 12(b)(6) analysis.

## B.    Request for Conversion to Summary Judgment

Reveles, however, takes the rather unusual step of: (1) urging this Court to

convert CHI's motion to one for summary judgment (the usual course when matters

outside the pleadings are presented in a Rule 12(b)(6) context, *see* Fed. R. Civ. P.

12(d)); yet also (2) arguing that genuine issues of material fact preclude summary

judgment; and then (3) claiming inability to present facts essential to justify her

opposition (*see* Fed. R. Civ. P. 56(d)) and asking for additional time to take discovery.[3]

(ECF No. 16 at 2, 10–15, 30–31; *see also* ECF No. 16-4 (Reveles's counsel's Rule

56(d) affidavit).)  This appears to be a tactical move motivated by her hope that the

Court will consider materials even further beyond her pleadings than her EEOC Charge.

---

[2] "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to
dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *GFF
Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also
Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) ("it
would be totally wasteful to uphold a claim on the false premise created by less than complete
documentation when the delayed consideration of the remaining documents would lead to
dismissal of that claim").

[3] Discovery has not commenced in this case.  (*See* ECF No. 37 (staying discovery
pending resolution of CHI's motion to dismiss).)

Given that well-established case law permits the Court to consider the Charge without straying from a proper Rule 12(b)(6) analysis, it is not clear that the Court can nonetheless declare that a motion to dismiss will be treated as a motion for summary judgment simply because Reveles now wants to, in effect, supplement her complaint—and thereby make it a moving target. CHI conferred with the Reveles before filing its motion to dismiss, and Reveles presumably refused to amend or withdraw any portion of her complaint. (*See* ECF No. 14 at 1.) Even so, she could have amended her complaint "as a matter of course" within 21 days after receiving CHI's motion. Fed. R. Civ. P. 15(a)(1)(B). She chose not to do so. The Court therefore rejects her request to convert CHI's motion to dismiss into a motion for summary judgment.[4] Nonetheless, the Court will *sua sponte* consider whether any of her additional documents may be considered under the same principles that permit the Court to consider the Charge.

First, Reveles submits an affidavit in which she presents additional factual allegations. (*See* ECF No. 16-1.) Her response brief relies heavily on this affidavit. (*See* ECF No. 16 at 20–21, 25–26 (frequently citing to "Exhibit No. 1," which is her affidavit).) But plaintiffs "cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss." *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010). Thus, the Court cannot consider Reveles's affidavit as if a part of her complaint. But the Court's analysis below will address some of Reveles's additional allegations to show that, even if they had been presented in the complaint, the Court's conclusions would remain unchanged.

Next, Reveles submits her pre-Charge submissions to the EEOC, specifically,

---

[4] This resolution necessarily moots her Rule 56(d) request.

her intake questionnaire and a four-page letter attached to it.  (ECF Nos. 16-2, 16-3.)

The letter, in particular, contains significant details not embraced by the Charge itself.  If

the EEOC had treated Reveles's intake questionnaire and the attached letter as a

charge but had never issued a formal charge of discrimination on EEOC Form 5, the

Court could likely consult the questionnaire and its attachment in the same way it can

consult the Charge in this case.  *See, e.g.*, *Fed. Express Corp. v. Holowecki*, 552 U.S.

389, 401, 405 (2008).  However, that is the exception to "the general rule . . . that [the

court] typically look[s] to the charge form if one exists.  This is because the charge form,

not a previous filing, is given to the employer to notify it of the potential claims against it

and ordinarily determines the scope of the EEOC's investigation."  *Jones v. Needham*,

856 F.3d 1284, 1290 (10th Cir. 2017); *see also Green v. JP Morgan Chase Bank Nat'l

Ass'n*, 501 F. App'x 727, 731–32 (10th Cir. 2012) (refusing to look to the intake

questionnaire because a formal charge issued).  The Court is bound by the Tenth

Circuit's holding in this regard, and therefore may not consult the intake questionnaire or

the attached letter.[5]

---

[5] As a former Regional Attorney for the EEOC's Denver district office, the undersigned is painfully aware of how EEOC investigators draft formal charges—and of how frequently, for no considered reason and often times out of laziness or incompetence, investigators fail to include within the charge critical factual allegations and theories of liability asserted in the intake questionnaire filled out by the charging party.  Thus, from the undersigned's perspective, the formal charge and the documents leading up to it (such as the intake questionnaire and related correspondence) should be considered as a package unless there is clear evidence that an employee intentionally abandoned certain accusations contained within the intake questionnaire.  This is particularly so in cases, such as this one, in which an unrepresented complainant with no legal training, goes to the EEOC and relies on one of its investigators to fully and competently prepare the legal form upon which so much later depends in the ensuing administrative proceeding and litigation.  (CHI claims Reveles was represented by an attorney during the administrative process, but cites nothing to support this claim.  *See* ECF No. 14 at 8 n.4.)  This Court cannot perceive the justice in a decisional rule which binds a charging party to what a government functionary—and not the aggrieved individual him- or herself—happens to think is important enough to put in this administrative form.  Unfortunately for Reveles here, binding Tenth Circuit case law, cited above, currently forecloses the approach this Court would

Moreover, in this case, Reveles specifically checked a box on the intake questionnaire stating, "I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  **I also understand that I could lose my rights if I do not file a charge in time.**"  (ECF No. 16-2 at 4 (boldface in original).)  For this additional reason, the Court finds that considering the intake questionnaire is inappropriate.

## C.    General Rule 12(b)(6) Standard

Given that the Court will evaluate CHI's motion under Rule 12(b)(6), it must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. PLAINTIFF'S ALLEGATIONS

Reveles began working for CHI in 2003 as a procurement manager.  (ECF No. 1

---

take.  As a result, form is exalted over substance, and a cramped and inflexible decisional rule by our Circuit has provided the Defendant with a procedural and substantive windfall in this case.

¶ 13.) In 2008, she was transferred to the Data Management Department as a "Product Specialist." (*Id.* ¶ 15.)

Another employee in Reveles's new department, Andrew Martin, soon began sexually harassing Reveles. He pressured her for sexual favors; made explicit sexual gestures toward her; made unwelcome comments regarding her clothing and looks; left sexually explicit notes, text messages, and voicemails for her; revealed his sexual fantasies about her; and gave her unwanted gifts. (*Id.* ¶¶ 17–24.)

Eventually Martin's harassment also began to take on violent overtones. His communications with her revealed that he knew her license plate number and the color of her daughter's school backpack, suggesting that he had been stalking her. (*Id.* ¶¶ 25, 31.) On at least two occasions, he threatened actual physical violence, including a threat that if Reveles reported his harassing behavior, he would "shove [her] into a place where nobody would ever find [her]." (*Id.* ¶¶ 28–29 (internal quotation marks omitted).)

No later than mid-2009, "Mr. Martin's comments placed Ms. Reveles in apprehension of contact that was harmful, offensive, and unwelcome." (*Id.* ¶ 34.) In August 2009, Reveles reported Martin's behavior to her supervisor, Kevin Kakuda, the vice president of supply chain data analytics at CHI. (*Id.* ¶¶ 16, 36.) Kakuda took no action. (*Id.* ¶ 37.)

Reveles saw Martin sexually harassing at least four other female employees around this time or in the ensuing years. (*Id.* ¶ 40.) One of those employees was Kelly Trapp. (*Id.*) Sometime in 2011, Trapp reported Martin's harassment to Kakuda, Steve Kehrberg (senior vice president of supply chain/clinical engineering), and William

Nelson (whose role at CHI is unclear). (*Id.* ¶ 43.)[6] Kakuda responded that he "needed

proof," something more than Trapp's word against Martin's. (*Id.* ¶ 44 (internal quotation

marks omitted).) Kakuda nonetheless wondered aloud whether Martin had behaved as

alleged at his former employer given that he "had left [that] former employment out of

the blue." (*Id.* ¶¶ 45–46.) Trapp again asked Kakuda to investigate, but he reiterated

his need for "proof," attributing that requirement to instructions he had received from the

company's human resources department. (*Id.* ¶ 47.) Trapp replied that Reveles could

produce documentation (presumably cards, text messages, voicemails, and the like).

(*Id.* ¶ 48.) Kakuda never requested any documentation from Reveles. (*Id.* ¶ 49.) He

also did nothing in response to Trapp's report that Martin was harassing another female

employee, Molly Hible. (*Id.* ¶ 51.)

　　　In early 2014, Reveles went to lunch with Hible, "who indicated that Mr. Martin

was sending unwelcome text messages and cards to her as well." (*Id.* ¶ 52.) On March

18, 2014, Reveles again reported Martin's harassment of her, as well as of Hible, to

Kakuda, Nelson, and Don Dudley (whom Reveles identifies as "National Director Supply

Chain"). (*Id.* ¶ 53.) Kakuda responded, "Someone should warn her [Ms. Hible] of Mr.

Martin's history," but also expressed concern for his own safety: "If I fire him [Mr.

Martin], how do I know he won't come after me and my family?" (*Id.* ¶¶ 54–55 (internal

quotation marks omitted; bracketed insertion in original).) Nelson, however, responded

by telling Martin "to 'stop' his behaviors" and "notify[ing] CHI's Human Resources

---

[6] Reveles identifies Nelson only as "Director." (*Id.* ¶ 53.) However, Reveles's
allegations portray Nelson as having far more day-to-day activities with CHI than one would
expect from a member of the board of directors. The Court presumes that "Director" in this
instance refers to the director of some organizational subdivision within CHI. No issue currently
presented for resolution turns on a precise understanding of Nelson's role.

department about the concerns." (*Id.* ¶ 57.)  The human resources department assigned one of its employees, Dave Seyfert, to investigate the case.  (*Id.* ¶ 58.)  It is not clear whether Reveles knew this.  She told Nelson, not Seyfert, "where Mr. Martin's text messages, cards, and notes were located in her desk for HR to review as part of [its] investigation and as the 'proof' that Mr. Kakuda continually stated was needed."  (*Id.* ¶ 59.)  No one at CHI came to inspect these materials.  (*Id.* ¶ 60.)

This entire time, Martin's sexually harassing behavior toward Reveles had continued unabated.  (*Id.* ¶ 38.)  And, around this time (early 2014), Kakuda promoted Martin to a position that made him Reveles's direct supervisor.  (*Id.* ¶ 39.)  This was apparently a breaking point for Reveles.  No later than May 31, 2014, Reveles requested and received a transfer to a department where her job duties would not require her to interact with Martin.  (*Id.* ¶¶ 67–68.)[7]  Kakuda remained her supervisor, however.  (*Id.* ¶ 68.)

From this point forward, Reveles's and Kakuda's relationship deteriorated.  On some unspecified date, "Mr. Kakuda mocked Ms. Reveles in an open meeting."  (*Id.* ¶ 70.)  "Mr. Kakuda went out of his way to avoid discussing work related matters with Ms. Reveles, assigning her tasks to other employees, sending emails to employees but excluding her from the list, [and] canceling meetings."  (*Id.* ¶ 73.)  "Further, part of Ms. Reveles'[s] job responsibilities are 'go lives' where a new hospital connects with CHI's

---

[7] Reveles's complaint does not itself provide the transfer date.  However, the complaint alleges that "Mr. Martin's sexually harassing behavior against Ms. Reveles continued and escalated through 2009, 2010, 2011, 2012, 2013, and 2014, without response from CHI."  (*Id.* ¶ 38.)  Moreover, the Charge states that the latest date on which discrimination took place was May 31, 2014.  (ECF No. 14-1 at 4.)  Given that Reveles's allegations regarding what happened to her post-transfer focus entirely on feared or actual retaliation based on reporting Martin's conduct (*see* ECF No. 1 ¶¶ 69–90), it is plain that the transfer ended her contact with Martin no later than May 31, 2014.

software." (*Id.* ¶ 74.)  In January 2016, Kakuda excluded Reveles from a "go live" in Houston.  (*Id.* ¶ 75.)  Also, "Ms. Reveles has repeatedly requested additional job related training but was told, 'i[t] i[s] not a good time for training,' even though other employees who did not complain were allowed training."  (*Id.* ¶ 76.)

In January 2016, a senior CHI human resources employee named Mary Beth Cohan contacted Reveles "to schedule an interview based on an anonymous complaint against Mr. Martin received through CHI's ethics hotline."  (*Id.* ¶ 77.)  On February 1, 2016, Reveles spoke with Nelson and "expressed her fears about reporting Mr. Martin." (*Id.* ¶ 78.)  In other words, Reveles seems to have feared what Martin might do if she spoke to Cohan about him.  "Mr. Nelson replied, 'Val, I know this is a stressful time for you, we will continue to work with HR through these matters and will follow their guidance as we have done with instances you've brought to our attention in the past.'" (*Id.*)  Reveles met with Cohan the following day "and provided her with all of the documentation again."  (*Id.* ¶ 79.)  It is not clear what Reveles means by "again" in this allegation, unless she means to link it back to her previous instruction telling Nelson where the documentation could be found.  (*See id.* ¶ 59.)  In any event, apparently on account of Reveles's evidence and evidence gathered from other victims of Martin's harassment, CHI fired Martin in February 2016.  (*Id.* ¶¶ 80–85.)

Around the same time, Cohan told Reveles that CHI would investigate Kakuda and Nelson based on their failure "to start an investigat[ion] or protect the female employees from repeated harassment."  (*Id.* ¶ 86.)  But, on May 2, 2016, "Ms. Cohan stated [to Reveles] that the investigation was not moving forward and all management would remain in their positions."  (*Id.* ¶ 88.)  Kakuda and Nelson remain employed with

CHI in management positions.  (*Id.* ¶ 90.)

Reveles filed her Charge with the EEOC on July 6, 2016.  (ECF No. 14-1 at 4.)
In the "Discrimination Based On" section of the Charge form, the boxes for "Sex" and
"Retaliation" are checked.  (*Id.*)  In the "Date(s) Discrimination Took Place" section,
June 1, 2009 is listed as the "Earliest" date and May 31, 2014 is listed as the "Latest"
date, and the box for "Continuing Action" is not checked.  (*Id.*)  Finally, the narrative
portion of the Charge reads as follows:

> I was hired by Catholic Health Initiatives as a Procurement
> Manager on or about April 12, 2003.  Beginning in or around
> 2009, and continuing until on or around May 2014, I was
> subjected to sexual harassment including but not limited to
> unwanted pressure for sexual favors, smacking and licking
> of lips, sexual[ly] explicit gestures, unwanted notes, cards,
> calls, voice mails, comments on my clothing, and sexual
> jokes by a co-worker.  I reported the discrimination to my
> direct[] supervisor, the company Vice President and Human
> Resources in 2009, 2014 and 2015,[8] but nothing was done.
>
> I believe I have been discriminated against because of my
> sex (female) and retaliated against for opposing
> discrimination in the workplace in violation of Title VII of the
> Civil Rights Act of 1964, as amended.

(*Id.*)  The EEOC issued a Notice of Right to Sue letter on July 15, 2016.  (ECF No. 1
¶ 92.)  Reveles filed her complaint on October 13, 2016, precisely 90 days later.  *See*
42 U.S.C. § 2000e-5(f)(1) (Title VII action must be brought within 90 days of the
claimant's notification of right to sue).

---

[8] As this narrative and the rest of the Charge makes clear, Reveles considered the
sexual harassment to have ended by May 2014.  Her report in 2015 apparently refers to a report
on behalf of another female employee whom Martin had then been harassing.  (*See* ECF No. 1
¶¶ 61–66.)

# III. ANALYSIS

## A.   Scope of the Charge

A formal EEOC charge of discrimination "must contain the general facts concerning the discriminatory actions later alleged in the legal claim," and "a plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones*, 856 F.3d at 1290 (internal quotation marks and citation omitted).  CHI argues that none of Reveles's Title VII theories are fairly encompassed by the Charge. (ECF No. 14 at 9–10.)

The Charge attempts to assert two Title VII violations: sexual harassment itself, and retaliation for opposing such sex discrimination.  Although brief, the factual basis for the sexual harassment claim is plainly set forth, including dates, the sorts of sexually hostile conduct to which Reveles was subjected, and the assertion that she reported the harassment on numerous occasions but her supervisors did nothing.  CHI offers no argument why this amount of detail was not enough to establish the scope of the administrative investigation that could reasonably have been expected to follow, nor does CHI point to any allegation connected to her sexual harassment claim that, in CHI's view, is not fairly encompassed within the Charge.  The Court therefore rejects CHI's claim in this regard.

The story is different for Reveles's retaliation theory.  Title VII specifically prohibits employers from retaliating against employees who complain of unlawful discrimination.  *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this

subchapter . . . .").  Actionable retaliation refers to any action that, when viewed objectively, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69 (2006) (internal quotation marks omitted).

In her complaint, Reveles alleges a series of acts that Kakuda took, allegedly in retaliation for her complaints against Martin: mocking her in an open meeting, going out of his way to avoid discussing work-related matters, assigning her tasks to other employees, excluding her from group e-mails, canceling meetings with her, not permitting her to be part of a "go live" project at a Houston hospital, and refusing her requests for additional job training while granting those requests to others.  (ECF No. 1 ¶¶ 70–76.)  CHI asserts that none of these allegations was fairly included within the Charge.  (ECF No. 14 at 10 & n.6.)  The Court agrees.

EEOC charges should be construed liberally.  *Jones*, 856 F.3d at 1290.  But liberal construction in this context means construing the charge to embrace the *legal theories* that can reasonably be discerned from the *facts alleged*.  *See, e.g.*, *Jones*, 856 F.3d at 1290–91 (facts asserted in the charge could be reasonably construed to embrace *quid pro quo* sexual harassment, even though the charge focused on allegations tending to show hostile environment sexual harassment); *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186–87 (10th Cir. 2007) (plaintiff's factual allegations reasonably embraced disability discrimination, even though plaintiff failed to check the box indicating a claim for disability discrimination).  The Court has yet to locate a case in this context applying the liberal-construction canon to infer *facts* in support of a *legal theory*.  *Cf. MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (refusing

to construe the charge to encompass disability discrimination based on depression when the charge only mentioned disability based on coronary disease).

Here, Reveles's Charge invokes "retaliation" without providing any factual support. It therefore fails to inform the reader of "the scope of the administrative investigation that can reasonably be expected to follow." *Jones*, 856 F.3d at 1290 (internal quotation marks omitted).

In her complaint, Reveles includes CHI's alleged "fail[ure] to investigate or otherwise address her complaints of sex discrimination against Mr. Martin" and its alleged choice to "ignor[e] [her] and her fellow employees' concerns about their physical safety" within her retaliation claim. (ECF No. 1 ¶ 110.) From this, the Court might infer that Reveles meant to say in her Charge that the continuing harassment through 2014 was itself retaliatory, *i.e.*, that CHI supervisors allowed the harassment to continue specifically as punishment for having reported it. But this inference is only available because the Court has now seen the complaint—nothing in the Charge itself would independently lead any reader to make this inference. And again, Tenth Circuit authority prevents this Court from looking beyond the charge to understand what it encompasses.[9]

The Court is thus constrained to conclude that Reveles failed to exhaust her administrative remedies regarding her retaliation claim, and it must be dismissed

---

[9] These allegations in the complaint are highly problematic in any event. If true, these could support a hostile sexual environment claim against CHI, discussed in Part III.B, but Reveles offers no allegations suggesting that CHI failed to investigate or ignored her concerns specifically *because* she complained about sexual harassment. *Cf. Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (to be liable for retaliation under Title VII, employer must act with "intentionally retaliatory" motive). To the contrary, she undermines this theory by asserting that her relationship with Kakuda (the alleged retaliator) was "outstanding" before the department transfer that put her out of contact with Martin. (ECF No. 1 ¶ 69.)

without prejudice.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (emphasis in original)).

**B.     Timeliness of Sex Discrimination Charges**

Although Reveles's retaliation claim theory is not fairly within her Charge, her sexual harassment charge is.  As to that, however, CHI argues that it was not timely presented to the EEOC, and so Reveles cannot be said to have exhausted this theory either.  The Court agrees.

1.     300-Day Requirement

"In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful [employment] practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice . . . ."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (explaining timing requirements established by 42 U.S.C. § 2000e-5(e)(1)) ("*Morgan*").  Colorado has established an "entity with the authority to grant or seek relief" (namely, the Colorado Civil Rights Division), so employees in Colorado are subject to this 300-day time limit.  *See, e.g.*, *Castaldo v. Denver Pub. Sch.*, 276 F. App'x 839, 841 (10th Cir. 2008).

Given this, the cut-off date for Reveles is September 10, 2015—the 300th day before July 6, 2016, when she filed her charge.

2.     Discrete Acts Versus Hostile Work Environment

If a would-be plaintiff believes that an employer has chosen not to hire her, or chosen to fire her, or otherwise discriminated against her "with respect to [her] compensation, terms, conditions, or privileges of employment" on account of a

protected characteristic (such as sex), *see* 42 U.S.C. § 2000e-2(a), she must file a

separate discrimination charge with the EEOC within 300 days of each such act,

*Morgan*, 536 U.S. at 110–15.  Any discrete discriminatory act more than 300 days old at

the time the charge is filed is "untimely filed and no longer actionable" absent

application of "equitable doctrines such as tolling or estoppel," which "are to be applied

sparingly."  *Id.* at 113 –15.

By contrast, "hostile work environment" claims, the sort of claim into which most

Title VII sexual harassment claims fall,

> are different in kind from discrete acts.  Their very nature
> involves repeated conduct.  The "unlawful employment
> practice" therefore cannot be said to occur on any particular
> day.  It occurs over a series of days or perhaps years and, in
> direct contrast to discrete acts, a single act of harassment
> may not be actionable on its own.  Such claims are based on
> the cumulative effect of individual acts.

*Id.* at 115 (citations omitted); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57,

66–67 (1986) (sexual harassment amounts to sex discrimination under Title VII if

sufficiently severe or pervasive such that it creates a sexually hostile environment).

Consequently, if "an act contributing to" the hostile environment claim occurred in the

300 days before the plaintiff filed the discrimination charge with the EEOC, the charge is

timely as to that claim and "the entire time period of the hostile environment may be

considered by a court for the purposes of determining liability."  *Morgan*, 536 U.S. at

117.

3.    Reveles's Hostile Environment Claim

Reveles's allegations, accepted as true and viewed in the light most favorable to

her, show that Martin's conduct created a hostile working environment for her from

approximately 2008 through May 31, 2014, when she was transferred to a different

department.  By any measure, then, it would seem that Reveles's hostile work environment claim is untimely.

Reveles has two responses.  First, she says, "the actions of [her] supervisors and CHI management created a hostile work environment for her through the present date." (ECF No. 16 at 17.)  But her Charge and her complaint entirely fail to support this, unless she is referring to Kakuda's alleged retaliation—a matter distinct from and later than her hostile sexual environment claim, as already discussed above.

Second, Reveles says that she "was not notified of [CHI's] failure to adequately respond to her complaints, the necessary fifth element of her hostile work environment claim, until May 2, 2016." (*Id.*)  By "necessary fifth element," Reveles refers to the Supreme Court's holding that an employer is not liable for a hostile working environment unless "it knew or should have known about the [employee] conduct [leading to the hostile environment] and failed to stop it."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998).  In other words, according to Reveles, she had no hostile work environment claim until she learned from Cohan on May 2, 2016 that the investigation into Kakuda's and Nelson's failure to discipline Martin had been closed.  (*See* ECF No. 1 ¶ 88.)  The Court disagrees.

Taking Reveles's allegations as true, she had a viable hostile working environment claim at least by late 2009.  By then, (1) she had endured Martin's revolting behavior; (2) she had reported Martin's conduct to her supervisor, Kakuda; and (3) Kakuda had "failed to escalate the issue, follow up on [her] complaint, request an HR investigation, or provide [her] with any concrete solutions on how to handle the situation."  (ECF No. 1 ¶¶ 18–37.)  There is no requirement that a prospective plaintiff

receive a formal notification from the human resources department that an investigation will not go forward—much less an investigation into employees' *failure to investigate*, rather than an investigation into the sexually harassing conduct itself. Such a requirement would be detrimental to employees, making it that much harder to sue under Title VII for sexual harassment. For reasons known only to Reveles, she waited nearly seven years after her sexually hostile environment claim accrued to finally file a charge of discrimination alleging same with the EEOC. Unfortunately for her, this extraordinarily lengthy delay is fatal to her sex discrimination claim in this case.

    4.    <u>Equitable Tolling</u>

Reveles argues that, if the Court finds her sex discrimination accusations untimely, she deserves equitable tolling. As already noted above, equitable tolling is potentially available, but it should be applied "sparingly." *Morgan*, 536 U.S. at 113.

Reveles argues that equitable tolling is appropriate here because CHI actively deceived her into believing that it would stop Martin's behavior, and she would have filed a charge earlier but for this deception. (*See* ECF No. 16 at 20–21.) *Cf. Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838–39 (10th Cir. 1979) (equitable tolling of Title VII claim may be appropriate on allegations that "rise to the level of active deception"). Notably, Reveles does not allege any active deception, or even inadvertent deception, in her complaint. The intake questionnaire and the attached letter—assuming the Court could consider them—likewise contain nothing suggesting deception. All of these documents tell a story of frustration at being *ignored* when reporting Martin's harassment. There is no claim that anyone at CHI promised anything to Reveles in response to her complaints about Martin at any time before the harassment ended on May 31, 2014, or in the 300 days thereafter. The closest

approach to anything of this nature is Reveles's allegation that CHI responded to her March 2014 complaint about Martin by assigning human resources employee Dave Seyfert to investigate the case. (ECF No. 1 ¶ 58.) But Reveles does not allege that she was aware of this event at the time, nor that Seyfert or anyone else affirmatively promised her anything with respect to the investigation—much less made such a promise with the intent to deceive.

The only place in the record in which Reveles complains of anything arguably approaching deception is in her affidavit in support of her response brief. (*See* ECF No. 16-1.) The Court has already ruled that it may not consider this affidavit in resolving CHI's motion. Even if the case were otherwise—*e.g.*, if Reveles had amended her complaint to add the affidavit's allegations—the Court would conclude that Reveles's assertions in this respect are conclusory and therefore not entitled to the presumption of truth, or otherwise do not raise a plausible claim for equitable tolling.

The affidavit begins with a recounting of events from the time Martin began sexually harassing her, up through the point when matters came to a head in 2014, and also briefly describes Martin's harassment of a different employee in 2015. (*Id.* ¶¶ 1–21.) This is largely consistent with the complaint, and includes specific names and dates. Then the affidavit inserts the following two sentences, which suddenly and rather conspicuously lack the names and dates that Reveles was so careful to give in prior portions of her affidavit:

> CHI repeatedly promised me that it would investigate my complaint, review my documentation, and punish this employee.
>
> I reasonably believed that CHI would handle the matter internally.

(*Id.* ¶¶ 22–23.)  Finally, the affidavit returns to allegations of retaliation (also largely consistent with the complaint), including names and specific dates.  (*Id.* ¶¶ 24–30, 33–40.)  Given this sequence, and the fact that nothing like this appeared in any of Reveles's submissions to the EEOC or in her complaint, the Court is forced to conclude that these allegations of CHI's promises were inserted purely as a tactic to stave off dismissal.  *Cf. O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976) ("when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist").

Reveles's affidavit also attempts to convert Kakuda's fear for his own safety into some sort of active deception.  As recounted in her complaint, when she complained to Kakuda about Martin in March 2014, Kakuda responded, "If I fire him [Mr. Martin], how do I know he won't come after me and my family?"  (ECF No. 1 ¶ 55 (internal quotation marks omitted; bracketed insertion in original).)  Reveles repeats the same allegation in her affidavit (ECF No. 16-1 ¶ 14), but then adds, "Mr. Kakuda's statement added to the fear I felt about Mr. Martin and actively discouraged me from pursuing a complaint against my coworker" (*id.* ¶ 15).  There are several problems with this assertion.  First, Reveles does not allege that Kakuda himself actively discouraged her from doing anything, but only that his statement somehow had that effect on her.  Second, Reveles does not allege that Kakuda actively intended to discourage Reveles.  Third, "actively discourag[ing] me from pursuing a complaint against my coworker" is different from actively discouraging someone from pursuing an EEOC charge against his or her employer.  Co-workers cannot be liable under Title VII.  *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 n.1 (10th Cir. 2007).

Reveles's affidavit also alleges that Cohan, the human resources employee who finally investigated Martin in 2016, "did not provide me with any information about" reporting harassment to the EEOC or the Colorado Civil Rights Division. (ECF No. 16-1 ¶¶ 31–32.) But again, Reveles does not allege that Cohan intentionally withheld such information so as to discourage Reveles from pursuing a charge. In any event, Reveles's interactions with Cohan took place mostly in early 2016, and Reveles filed her Charge on July 6, 2016. Thus, even assuming Cohan remained silent out of a nefarious motive, Cohan at best delayed Reveles's Charge by three or four months, and Reveles does not explain how those three or four months would have made any difference in her claims as she presently alleges them.

Given all this, Reveles's Title VII claim for hostile environment sexual harassment must be dismissed. In a strict technical sense, this is a dismissal for failure to exhaust administrative remedies because Reveles failed to file a timely charge. Dismissals based on failure to exhaust are usually without prejudice. *Gallagher*, 587 F.3d at 1068. However, the timeliness analysis above is functionally indistinguishable from a traditional statute of limitations analysis, and it bars any future claim by Reveles seeking redress for the sexually hostile environment that CHI allegedly permitted through May 2014. Thus, Reveles's hostile sexual environment claim will be dismissed with prejudice. *Cf. Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1271 (10th Cir. 2001) ("Despite that 'without prejudice' label [affixed by the district court to a dismissal for failure to timely exhaust], in real world terms the dismissal was *with* prejudice because any attempt by Walker to refile her claims [with the EEOC] after the district court's order was issued would be out of time." (citation omitted; emphasis in original)).

## C. Jurisdiction Over Remaining Claims

Reveles states that she filed a second EEOC charge, which the EEOC is still investigating, and that she has filed or will file a third charge in the very near future. (ECF No. 38 ¶¶ 4–5.) She does not claim that she has received a Right to Sue letter as to any of those charges. Consequently, there appears to be no present basis for amendment of her Title VII claims. The Court is thus left with only supplemental jurisdiction over Reveles's state-law claims. *See* 28 U.S.C. § 1367.

This Court "may decline to exercise supplemental jurisdiction over a claim . . . if * * * [it has] has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Such dismissal is generally appropriate when pretrial proceedings remain in an early stage. *See, e.g.*, *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1550 (10th Cir. 1996). The Court finds it particularly appropriate here given that all pretrial proceedings were stayed pending the outcome of CHI's motion. Thus, the Court will dismiss Reveles's state-law claims so that they may be re-filed in state court.

The Court notes that § 1367(d) tolls the statutes of limitation on dismissed supplemental state-law claims for 30 days after this Court's dismissal. This provision cannot revive a state-law claim for which the statute of limitations already expired before filing this lawsuit—a matter the parties contest, and about which the Court expresses no opinion. The Court points out § 1367(d) solely to note that, to the extent Reveles believes any of her state-law claims were timely when filed in this Court, they could still become untimely if she does not move quickly to re-file them in state court.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     The stay of proceedings (*see* ECF No. 37) is LIFTED;

2. CHI's Motion to Dismiss (ECF No. 14) is GRANTED as follows:

   a. Reveles's First and Second Claims for Relief (Title VII sex discrimination and sexual harassment) are DISMISSED WITH PREJUDICE;

   b. Reveles's Third Claim for Relief (Title VII retaliation) is DISMISSED WITHOUT PREJUDICE for failure to exhaust remedies; and

   c. Reveles's Fourth through Ninth Claims for Relief are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3); and

3. The Clerk shall enter judgment consistent with this dismissal and shall terminate this case. The parties shall bear their own costs.

Dated this 21st day of June, 2017.

                                        BY THE COURT:



                                        _____
                                        William J. Martinez
                                        United States District Judge